# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Affiant, Jose A. Alcantara, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) Cleveland, Ohio, hereinafter referred to as "Affiant," being first duly sworn, deposes and states as follows:

## AFFIANT'S BACKGROUND

Affiant, Jose A. Alcantara, is currently employed as a Police Officer with the Euclid, Ohio PoliceDepartment (EPD), and has been so since July of 2008. Affiant was employed as a Police Officer with the Cuyahoga Metropolitan Housing Authority (CMHA) and was so since July 2002. Affiant has been assigned to the Drug Enforcement Administration (DEA), Cleveland District Office (CDO), as a Task Force Officer (TFO) since January 2021. As such, Affiant is an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

## TRAINING AND EXPERIENCE

1. As a Task Force Officer (TFO) with DEA, your Affiant has been assigned to investigate activities of drug trafficking organizations, drug-related gang and violent crime activities, and other criminal offenses. Your Affiant has participated in narcotics/drug enforcement, and the dismantlement of mid- to upper-level drug trafficking organizations. Your Affiant has planned and executed long-term investigative operations leading to the disruption and dismantlement of criminal street gangs engaged in trafficking drugs. Those investigative operations have included undercover operations and Title III intercepts of telephone communications and activities.

2. Except as otherwise noted, the information set forth in this Affidavit has been provided to your Affiant by DEA agents or other law enforcement officers. Unless otherwise noted, whenever in this Affidavit your Affiant asserts that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom your Affiant has spoken or whose report your Affiant has

read and reviewed.

3. Since the Affidavit is being submitted for the limited purpose of requesting a criminal complaint, your Affiant has not included each and every fact known concerning this investigation. Your Affiant has set forth only the facts necessary to establish that there is probable cause to issue the requested complaint.

4. Affiant makes this affidavit in support of a criminal complaint charging **ANTONITO S. BRADLEY II** with one count of Possession of 50 Grams or More of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and **ALBERT ROBINSON** with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1).

## PROBABLE CAUSE

5. On October 12, 2022, at approximately 12:30 pm, members of the Drug Enforcement Administration (DEA) Cleveland District Office (CDO) and Ohio State Highway Patrol Officers established surveillance at 14200 Emery Rd Cleveland, Ohio in reference to an ongoing investigation into BRADLEY II and drugs being trafficked out of this residence. Investigators had previously conducted surveillance and followed BRADLEY II to this address several times. Investigators had also previously witnessed suspected drug transactions involving BRADLEY II occur in the driveway of 14200 Emery Rd Cleveland, Ohio. Using surveillance monitoring devices, Investigators were aware of BRADLEY II visiting this location several times throughout the day and night.

6. At approximately 2:32 pm, Investigators conducted surveillance of BRADLEY II as he arrived at 14200 Emery Rd Cleveland, Ohio. Prior to BRADLEY II's arrival, a blue Chevy Equinox had arrived at the residence. The driver of the Equinox (hereinafter referred to as Buyer #1) remained in his vehicle until BRADLEY II's arrival.

7. Upon BRADLEY II's arrival, TFO Maria Matos observed Buyer #1 exit his Equinox and approach BRADLEY II's vehicle, at which time BRADLEY II appeared to instruct Buyer #1 to go with him to the detached garage area. BRADLEY II was wearing a satchel around his chest. A few seconds later, the garage door opened at which time BRADLEY II and Buyer #1 entered the garage. A short time later, a white male, later identified as the resident who lived at 14200 Emery Rd., exited the residence of 14200 Emery Rd. and walked towards the garage area. After a brief period, all three males (BRADLEY II, Buyer #1, and the resident who lived there) exited the garage and parted ways. TFO Matos was able to observe

that Buyer #1 appeared to be clutching something in his hand, consistent with just having purchased drugs.

8. After Buyer #1 reentered his Equinox and departed the area, investigators conducted a traffic stop on Buyer #1. During the traffic stop, investigators recovered several grams of a red / pink chunky substance, that based on training and experience, was consistent with fentanyl, which investigators believed that Buyer #1 had just purchased at 14200 Emery Road.

9. Other investigators followed BRADLEY II away from 14200 Emery Rd Cleveland, Ohio to the area of 12000 Summerland Ave where BRADLEY II picked up a black male later identified as ALBERT ROBINSON.

10. At approximately 2:55 pm, Ohio State Highway Patrol Tpr. James M. Baker and Tpr. Hershman conducted a traffic stop of BRADLEY II's vehicle. Tpr. Hershman made a driver approach and spoke with the driver, identified as BRADLEY II. Tpr. Baker made a passenger side approach and spoke with the right front passenger, ALBERT ROBINSON. As Tpr. Baker was speaking with the passenger he could smell the odor of raw marijuana coming from inside the vehicle. Tpr. Baker asked the passenger if he had any weapons on him and he replied "No". At that time Tpr. Hershman had BRADLEY II step out and he complied and was placed in the rear of his patrol car. Once the driver was secured, Trp. Baker had ROBINSON step out and he complied. ROBINSON was wearing a satchel around his neck (not the same satchel that BRADLEY II was seen wearing at 14200 Emery), and was advised to take it off and set it on the hood of the vehicle. As he did Tpr. Hershman observed the lower grip of a firearm in the satchel plain view. Troopers attempted to place ROBINSON in handcuffs and he resisted by flailing his arms and began to runaway. Tpr. Hershman had hold of ROBINSON as he continued to resist. Tpr. Baker gave an audible warning to the ROBINSON that he would tased him and he continued to resist. Tpr. Baker waited for separation and deployed his taser striking ROBINSON in his front chest cavity. The taser was effective and ROBINSON fell to the ground. Tpr. Baker and Tpr. Hershman then secured ROBINSON in handcuffs. The barbs were taken out and ROBINSON was searched and secured in the rear of Tpr. Bakers patrol car.

11. A probable cause search of ROBINSON's satchel revealed a handgun and suspected narcotics. The handgun was a loaded semi-automatic Smith and Wesson M&P 40, serial number #DXC1260. There was one round in the chamber and 12 rounds in the seated magazine. The bag of narcotics contained two separate types. There was approximately 26

grams total, consisting of approximately 20 grams of suspected heroin / fentanyl, and 6 grams of suspected cocaine, as well as a digital scale.

      12.    ROBINSON is prohibited from possessing a firearm under federal law due to a prior conviction for Attempted Felonious Assault (F-4) and Discharging a Firearm on or Near Prohibited Premises (F-3), in Cuyahoga County Common Pleas Court, Case Number CR-17-622070, on or about April 11, 2018.  It should also be noted that according to the Ohio Department of Rehabilitation & Correction public website, ROBINSON is currently on Adult Parole Authority (APA) Supervision and is listed as an APA violator at large.

      13.    Based on my training, experience, and knowledge, the Smith and Wesson handgun recovered from ROBINSON's satchel had been manufactured outside of Ohio, meaning that it traveled in interstate commerce before ROBINSON possessed it.

      14.    An In-House (NIK) field test of the 6 grams of suspected cocaine recovered from ROBINSON's satchel was conducted which showed positive for cocaine a scheduled II drug. Due to the 20 grams of suspected heroin / fentanyl containing possible fentanyl, it will be sent to the Cuyahoga County Regional Forensic Science Laboratory for analysis.

      15.    A probable cause search of BRADLEY II's satchel (which he had been wearing on his chest when he went inside the garage at 14200 Emery Road, and was a different satchel than the one ROBINSON possessed containing a handgun and suspected drugs) revealed approximately 2 grams of suspected cocaine, three multiple colored pills that were believed to be fentanyl pills, and cell phones. A probable cause search of the vehicle revealed nothing else illegal inside. An In-House (NIK) field test of the two grams of suspected cocaine found in BRADLEY II's satchel was conducted, which showed positive for cocaine. The three multi-colored pills will be sent to the Cuyahoga County Regional Forensic Science Laboratory for analysis.

      16.    Investigators then returned to 14200 Emery Rd Cleveland, Ohio and conducted a "knock and talk" interview. The male resident (same resident who was seen exiting the house and going into the garage with BRADLEY II and Buyer #1 earlier) met Investigators at the front of the residence, at which time the male resident was advised of the surveillance being conducted at his residence. The male resident subsequently consented to a search of the detached garage area of his residence, where the suspected drug deal between BRADLEY II and Buyer #1 had taken place.

      17.    While conducting a consent search of the garage, Investigators located a red

toolbox with a padlock. The male resident stated to Investigators that the tool box did not belong to him, nor did he have the key. Notably, Investigators at BRADLEY II's traffic stop had located several keys in BRADLEY II's satchel including a key that would possibly unlock the padlock on the red toolbox. Investigators transported that key to the garage and tried the key in the pad lock, which worked and unlocked the red toolbox.

18.  Inside the red toolbox, Investigators located multiple clear bags with red / pink substance, suspected fentanyl, (matching the appearance of the red / pink suspected fentanyl that had been recovered during the traffic stop of Buyer #1), as well as multiple clear plastic bags with crystalline substance. Just above the tool box on a top shelf, Investigators located a zip-lock baggie with crystalline substance and two large bags with white powder (suspected cocaine). Investigators also located multiple baggies with unknown residue on a nearby work bench.

19.  An In- House (NIK) field test of the two clear bags containing suspected cocaine was conducted which was found to contain 103 grams of Cocaine a schedule II drug.

20.  An In-House (NIK) field test of the multiple crystalline substance (in the bags found in the red toolbox that BRADLEY II had a key to unlock) was conducted and it was found to contain approximately 297 grams of Methamphetamine a schedule II drug. The suspected fentanyl was also prepared and will be sent to the Cuyahoga County Regional Forensic Science Laboratory for analysis.

21.  Based on my training and experience, as well as the circumstances of this case, the approximately 297 grams of field-tested methamphetamine found in the red toolbox was indicative of distribution, not personal use, due to the amount, as well as BRADLEY II's actions of distributing the red / pink suspected fentanyl to Buyer #1 in that same garage, and having a key to unlock the toolbox the methamphetamine was found inside.

22.  A check through LEADS of the recovered 40 Caliber Smith and Wesson M&P serial#DXC1260 revealed the weapon was stolen out of Cleveland, Ohio on November 14, 2021 during a Burglary.

5

## CONCLUSION

Based upon the above listed facts and circumstances, there exists probable cause to issue the requested criminal complaints against BRADLEY II and ROBINSON.

_____
Jose A. Alcantara
Task Force Officer
Drug Enforcement Administration

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge
**12:12 PM, Oct 13, 2022**